IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CRAIG RAY CANARY,

               Petitioner,               No. CIV S-08-0053 JAM EFB P

     vs.

ANTHONY HEDGPETH,

               Respondent.          FINDINGS AND RECOMMENDATIONS

_____/

     Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2005 judgment of conviction entered against him in the Sacramento County Superior Court on charges of assault with a deadly weapon, inflicting corporal injury on his spouse, and child endangerment. He seeks relief on the grounds that: (1) the erroneous admission of evidence violated his right to due process; (2) his trial counsel rendered ineffective assistance; and (3) his sentence constitutes cruel and unusual punishment. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

////

////

////

1

## I.    Factual and Procedural Background[1]

Defendant Craig Ray Canary was convicted by a jury of assault with a deadly weapon (Pen.Code, § 245, subd. (a)(1)) inflicting corporal injury on a spouse (Pen.Code, § 273.5, subd. (a)), and child abuse under circumstances likely to produce great bodily injury (Pen.Code, § 273a, subd. (a)).  The jury also found true an enhancement for personal use of a deadly weapon (Pen.Code, § 12022, subd. (b)(1)) in the assault and child abuse counts, and found true a personal infliction of great bodily injury enhancement (Pen.Code, § 12022.7, subd. (e)) in the assault and spousal abuse counts.  The trial court found true that defendant suffered two prior strikes within the meaning of the "Three Strikes" law and denied defendant's motion to strike the priors.  Defendant was sentenced to 35 years to life: 25 years to life for the assault with a deadly weapon offense, four years for the great bodily injury enhancement, one year for the deadly weapon enhancement, and five years for a prior serious felony.

On appeal, defendant contends: (1) the trial court erroneously admitted a 911 call made by one of the witnesses; (2) evidence of prior uncharged offenses was improperly admitted; (3) trial counsel was ineffective; (4) cumulative error warrants reversal; and (5) his sentence violates the prohibition against cruel and unusual punishment.  We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

This case involves an incident where a Pontiac Sunbird driven by defendant hit broadside a Ford Thunderbird containing his wife, Kimberly Canary, and Justin Noel, her son by a previous marriage, just after midnight on January 21, 2004.  The couple and Kimberly's son lived at the house of defendant's parents on Park Riviera Way in Sacramento.

On January 20, 2004, Kimberly drove to a local drugstore without telling defendant, which made him angry.  She briefly left home after an argument with defendant.  Defendant was gone when she returned.  Defendant, who had been drinking, left and went drinking at various friends' houses.

Just after midnight on January 21, 2004, Wesley Lavore, a surgical assistant and former paramedic, was driving down Park Riviera Way.  He noticed a parked red car facing the wrong direction, and another car backing out of a driveway.  As he passed the car in the driveway, Lavore looked in his rearview mirror to see if the car

[1]   In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

2

was going to pull out. He saw the red car collide with the car leaving the driveway, a silver Thunderbird. The red car did not have its lights on.

Lavore turned around, stopped, and left his car to help. He saw a young boy leave the car and run into the house. The red car was driven by defendant, who backed up and left. Lavore went to the Thunderbird to check the woman trapped inside the vehicle.

Defendant returned to the scene on foot. He seemed very intoxicated, and yelled at the female victim and someone who had come from the house. Defendant went over to the victim and hit her in the face until Lavore and others pulled him off. Defendant yelled at the people who pulled him off and went into the house.

Lavore dialed 911 just after the collision. A tape recording of the call was played to the jury. Lavore told the dispatcher that a red Datsun "T-boned" a Thunderbird. He said that the lady in the Thunderbird was pinned behind the steering wheel of her car. Lavore also described defendant's return to the scene. The victim, moaning, "Oh God," was heard on the tape. Defendant was heard saying, "Oh, you're a rat now, huh?"

People in the neighborhood testified to what happened after the collision. One neighbor saw a person looking like defendant approach the scene on foot, call the victim a "whore," and attack her. Another person saw Justin leave the vehicle, and that Justin's mother was inside the vehicle and badly injured. Defendant approached the scene seemingly intoxicated. Defendant walked up to the victim and said, "You deserve to fucking die," and then said, "I hope you die." Defendant punched the victim in the face after yelling at her. Defendant was found hiding in the bushes in a neighbor's yard and arrested. As defendant was being led to the patrol car he exclaimed, "I meant to hit her. I saw her making a U-turn in front of my parents' house, and I hit her – or excuse me – I meant to kill her." He then said "I started making a U-turn in front of my parents' house and I hit her. The fucking bitch is on crank. She – I hope she dies" and concluded by saying, "I know I fucked up, but she deserves to fucking die."

Kimberly suffered severe injuries from the collision, receiving a concussion, several fractured ribs, a collapsed left lung, pelvic fractures, and a compression fracture of her lumbar spine. Her treating doctor testified that these injuries were consistent with a violent car collision.

Kimberly remembered little about the collision. She thought the crash took place between 5:00 and 6:00 p.m. Kimberly thought she made two U-turns after leaving the house. Everything went blank after she started the second U-turn. She did not remember

getting hit, or anything else until waking up in the hospital five days later.

Justin did not remember all of what happened the night of the collision.  His mother told him they were leaving the house, but he did not know why.  He recalled his mother saying, "watch this" during a U-turn, and then his grandmother coming to get him from the hospital.  He denied knowing about any fight between defendant and his mother that evening, but admitted hearing them yelling in the trailer where they lived.

Justin also testified about an earlier confrontation where defendant looked like he was going to hit Kimberly with a brick.  Justin intervened, and defendant hit him in the nose.  Officer Darby Lannom responded to this incident on December 8, 2003.  Defendant admitted slapping Justin, but could not explain to Officer Lannom why Justin had a bloody nose if he had only been slapped.

Officer Jill Landberg also responded to the disturbance.  Officer Landberg noticed Justin had a swollen mouth and lips.  Justin told Officer Landberg he had just intervened in a fight between his parents, and defendant hit him three times.  Justin also talked about a confrontation with defendant on December 7.  While Justin was staying at his best friend Vincent's house, defendant came over and accused Justin of stealing a watch.  Defendant told Justin to come with him, and that "he was going to put holes in [Justin]."  Justin thought this meant defendant would shoot him.

Officer Patrick McBeth interviewed Justin after the accident.  Justin told Officer McBeth his mom and defendant argued that evening.  Kimberly and Justin left the house because defendant threatened to beat her up.  Defendant was gone when they came back, but they left again after he called and said he was coming home and would beat her up.  Justin and his mom got their things, backed out of the driveway, and defendant ran into their car on purpose.  Justin saw defendant swearing at his mother and hitting her after the collision.

Defendant testified on his own behalf.  Kimberly was angry with defendant that day and left the house.  After Kimberly left, defendant finished his bottle of whiskey, borrowed his sister's car, and visited various friends to go drinking.

As he approached home, defendant could not tell the identity of the car until he was 150-200 feet away.  The car was almost out into the street and blocking defendant's lane, so he tried to go around it.  As defendant tried to pass, the other car turned in front of him.  Defendant hit the brakes as he was going over a speed bump, but could not stop or turn away in time.  Defendant denied striking

4

Kimberly after the collision.  Defendant did not mean to hit his wife's car or to hurt her.

An accident reconstructionist testified for the defense.  The investigation by the Sacramento Police Department was inadequate to allow him to conduct an independent analysis.  The impact was less than 35 miles per hour, because a collision at a higher speed was likely to be fatal.  The damage pattern was consistent with the Thunderbird making a U-turn in front of defendant's car.

The prosecution filed a pretrial in limine motion to admit the 911 tape.  Defendant objected, claiming the call would be difficult to authenticate, and would violate *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177].  Defense counsel agreed with the court's conclusion that the *Crawford* objection was improper because the declarant would also testify.  Defense counsel had no problem with the tape so long as it was authenticated, and references to defendant as a "bad guy" were redacted.  The trial court held that the tape did not implicate the confrontation clause, and that references in the tape to defendant as the "bad guy" would be redacted as more prejudicial than probative.

At trial, defendant objected to the testimony about the December 2003 incidents on relevance and Evidence Code section 1109 notice grounds.  The court denied the objection, but excluded under Evidence Code section 352 testimony that defendant and Kimberly had fought for years and defendant had hit her a number of times in the past.[2]

Resp.'s Lodg. Doc. 2 (hereinafter Opinion), at 1-7.

After petitioner's judgment of conviction was affirmed by the California Court of Appeal, he filed a petition for review in the California Supreme Court, in which he raised the same claims contained in the instant petition.  Resp.'s Lodg. Doc. 3.  That petition was summarily denied.  Resp.'s Lodg. Doc. 4.

## II.    Analysis

### A.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28

---

[2]  The trial court did not rely on Evidence Code section 1109 to admit the uncharged misconduct evidence.

5

1   U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

2   application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*,

3   202 F.3d 1146, 1149 (9th Cir. 2000).

4        Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

5   corpus relief:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of the
> claim -
>
> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

13        Under section 2254(d)(1), a state court decision is "contrary to" clearly established

14   United States Supreme Court precedents if it applies a rule that contradicts the governing law set

15   forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable

16   from a decision of the  Supreme Court and nevertheless arrives at different result.  *Early v.*

17   *Packer*, 537 U.S. 3, 7 (2002) (*citing Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

18        Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas

19   court may grant the writ if the state court identifies the correct governing legal principle from the

20   Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

21   case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because

22   that court concludes in its independent judgment that the relevant state-court decision applied

23   clearly established federal law erroneously or incorrectly.  Rather, that application must also be

24   unreasonable."  *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal

25   citations omitted) (it is "not enough that a federal habeas court, in its independent review of the

26   legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").  "A state

court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008). *See also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85 (2011). That presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). However, when it is clear that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Himes v. Thompson*, 336 F.3d 848,

853 (9th Cir. 2003). "Independent review of the record is not de novo review of the

constitutional issue, but rather, the only method by which we can determine whether a silent

state court decision is objectively unreasonable." *Id.* Where no reasoned decision is available,

the habeas petitioner has the burden of "showing there was no reasonable basis for the state court

to deny relief." *Harrington*, 131 S. Ct. at 784.

**B. Petitioner's Claims**

### 1. Erroneous Admission of Evidence/Ineffective Assistance of Counsel

#### a. 9-1-1 Call

In his first ground for relief, petitioner claims that the 9-1-1 call made by Wesley Lavore

was "not admissible" and "should have been excluded." Pet. at 5. The court will construe this

argument as a claim that the erroneous admission into evidence of the 9-1-1 call violated

petitioner's right to due process. Petitioner also claims that his trial counsel "was ineffective for

failing to object to the 9-1-1 tape." *Id.*[3]

The California Court of Appeal rejected these arguments, reasoning as follows:

> Defendant claims Lavore's 911 call was inadmissible hearsay.
> Trial counsel did not make a hearsay objection to the call, and had
> no objection to its admission once the hostile references to
> defendant were removed from the tape. Defendant's failure to
> raise a hearsay objection forfeits his claim on appeal. (*People v.
> Farnam* (2002) 28 Cal.4th 107, 153.)

---

[3] Respondent argues that petitioner's federal due process claim is unexhausted, noting
that his petition for review filed in the California Supreme Court argues only that the trial court's
error in admitting the 9-1-1 call violated state law. Answer at 2, 9, 11; Resp.'s Lodg. Doc. 3, at
2-6. Assuming arguendo that petitioner's federal due process claim was not exhausted in state
court, this court recommends that it be denied on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An
application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure
of the applicant to exhaust the remedies available in the courts of the State"). Respondent also
argues that the failure of petitioner's trial counsel to make a contemporaneous objection to the
admission of the 9-1-1 call constitutes a procedural default which prevents this court from
considering the merits of this claim. Answer, at 13. This court assumes that the claim is not
subject to a procedural default but nonetheless recommends that it be denied on the merits.
*Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (a reviewing court need not invariably
resolve the question of procedural default prior to ruling on the merits of a claim); *Busby v.
Dretke*, 359 F.3d 708, 720 (5th Cir. 2004) (same).

Defendant asserts this constitutes ineffective assistance of counsel. A criminal defendant bears a heavy burden in order to prevail on an ineffective assistance of counsel claim on appeal.  Defendant must show "his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to defendant . . . ."  (*People v. Kipp* (1998) 18 Cal.4th 349, 366.)  Where an evidentiary objection would have lacked merit, counsel is not ineffective in failing to object.  (*People v. Carter* (2003) 30 Cal.4th 1166, 1210.)

Defense counsel was not ineffective because the tape was properly admitted as a spontaneous declaration under Evidence Code section 1240.  Evidence of an extrajudicial statement may be admitted as an exception to the hearsay rule if it "[p]urports to narrate, describe, or explain an act, condition, or event perceived by the declarant," and "[w]as made spontaneously while the declarant was under the stress of excitement caused by such perception."  (Evid.Code, § 1240.)  Admissibility under this rule of evidence requires (1) some occurrence that is startling enough to produce nervous excitement and to render the statement spontaneous and unreflecting, (2) that the statement must have been made while the declarant was still under the influence of nervous excitement and did not have time to contrive and misrepresent, and (3) that the utterance must relate to the occurrence preceding it.  (*People v. Poggi* (1988) 45 Cal.3d 306, 318.)

The 911 call readily satisfies the first and third conditions of the exception.  Lavore made the call just after seeing a serious automobile collision and the call was related to the collision.  Defendant claims Lavore's call was not excited as required by the Evidence Code because of Lavore's medical training, the delay when he was placed on hold by the 911 operator, and he merely responded to the 911 operator's questions.

A spontaneous statement can be made by someone who is calm enough to speak coherently.  "To conclude otherwise would render the exception virtually nugatory: practically the only 'statements' able to qualify would be sounds devoid of meaning."  (*People v. Poggi*, *supra*, 45 Cal.3d at p. 319.)  While Lavore's medical training may have made him more composed, there is no reason to conclude this enabled him to contrive a statement in spite of the stress of the situation.

Defendant's claim concerning the time on hold is no better.  While defendant cannot establish how long Lavore was put on hold, it was not very long.  Lavore called 911 after leaving his car, and started talking to the operator when defendant drove off.  A person can make a spontaneous declaration 30 minutes or more after the incident.  (*See People v. Poggi*, *supra*, 45 Cal.3d at p. 319.)  Since

9

1   the delay here was much shorter, Lavore's statement was
    spontaneous.  The spontaneity of Lavore's declarations is not
2   diminished because most of them were responses to the operator's
    questions.  (*Id.* at pp. 319-320.)
3

4   Opinion, at 7-9.

5         As explained above, a federal writ of habeas corpus is not available for alleged error in

6   the interpretation or application of state law.  Absent some federal constitutional violation, a

7   violation of state law does not provide a basis for habeas relief.  *Estelle*, 502 U.S. at 67-68.

8   Accordingly, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas

9   relief only if it renders the state proceedings so fundamentally unfair as to violate due process.

10  *Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000); *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th

11  Cir. 1999); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  "Only if there are no

12  permissible inferences the jury may draw from the evidence can its admission violate due

13  process."  *Id.* at 920.

14        After a review of the record, this court concludes that the admission into evidence of Mr.

15  Lavore's 9-1-1 call did not result in a due process violation.  Lavore testified as a witness at

16  petitioner's trial and described the same events that he related to the 9-1-1 operator, including

17  the victim's moans and petitioner's assault on the victim as she was trapped in the car.

18  Reporter's Transcript on Appeal (RT) at 268-81.  As explained by the California Court of

19  Appeal, other witnesses testified about similar events at the scene.  Accordingly, the 9-1-1 tape

20  was largely cumulative of live testimony at petitioner's trial.  Further, as explained by the state

21  appellate court, certain parts of the tape were redacted in order to avoid undue prejudice to

22  petitioner.  Under these circumstances, the state court ruling admitting the 9-1-1 call into

23  evidence did not render petitioner's trial fundamentally unfair or otherwise violate the Due

24  ////

25  ////

26  ////

1    Process Clause.[4]

2          Petitioner also argues that his trial counsel was ineffective in "failing to object to the 911

3    tape." Pet. at 5.  As explained by the California Court of Appeal, petitioner's trial counsel did

4    oppose the prosecutor's motion seeking admission into evidence of the audiotape of the 9-1-1

5    call.  RT at 24-25.  Counsel argued that the tape would be "hard to authenticate;" that the tape

6    was unnecessary because Mr. Lavore was going to testify; and that the admission of the tape

7    would violate the *Crawford* decision.  *Id.*  After agreeing with the trial court that *Crawford* was

8    inapplicable because Lavore intended to testify, counsel requested that the tape be redacted to

9    eliminate references to petitioner as "the bad guy."  *Id.* at 25-26.  As set forth above, the trial

10   court agreed to this request.  *Id.* at 144-45.  On appeal, petitioner claimed that his trial counsel

11   should have argued that the 9-1-1 tape was inadmissible under state hearsay law.  *See* Resp.'s

12   Lodg. Doc. 1, at 14-21.  This court will assume that petitioner is making that same claim here.

13         To support a claim of ineffective assistance of counsel, a petitioner must show that

14   counsel's performance fell below an objective standard of reasonableness and that he was

15   prejudiced by counsel's deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 693-94

16   (1984).  An attorney's failure to make a meritless objection or motion does not constitute

17   ineffective assistance of counsel.  *Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing

18

19         [4] Any claim that the admission into evidence of the 9-1-1 call violated the Confrontation
20   Clause also lacks merit because Mr. Lavore testified at petitioner's trial and was available for
     cross-examination.  *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("when the
     declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at
21   all on the use of his prior testimonial statements"); *Delaware v. Fensterer,* 474 U.S. 15, 22
     (1985) ("the Confrontation Clause is generally satisfied when the defense is given a full and fair
22   opportunity to probe and expose . . . infirmities through cross-examination, thereby calling to the
     attention of the factfinder the reasons for giving scant weight to the witness' testimony");
23   *California v. Green*, 399 U.S. 149, 162 (1970) ("where the declarant is not absent, but is present
     to testify and to submit to cross-examination, our cases, if anything, support the conclusion that
24   the admission of his out-of-court statements does not create a confrontation problem;" ); *United
     States v. Valdez-Soto*, 31 F.3d 1467, 1470 (9th Cir. 1994) ("We are aware of no Supreme Court
25   case, or any other case, which holds that introduction of hearsay evidence can violate the
     Confrontation Clause where the putative declarant is in court, and the defendants are able to
26   cross-examine him").

*Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985)).  *See also Rupe v. Wood*, 93 F.3d 1434,

1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

"To show prejudice under *Strickland* resulting from the failure to file a motion, a defendant must

show that (1) had his counsel filed the motion, it is reasonable that the trial court would have

granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would

have been an outcome more favorable to him."  *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir.

1999) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 373-74 (1986)).

        The California Court of Appeal concluded that the 9-1-1 call was admissible under state

law regarding hearsay evidence.  This Court is bound by the state court's interpretation of state

law.  *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993).  In light of that interpretation, an

objection to the admission of the tape would have been futile.  Petitioner's trial counsel was not

ineffective in failing to make an argument that had no merit.  *See Knowles v. Mirzayance*, ___

U.S. ___, 129 S.Ct. 1411, 1420 (2009) (counsel not required "to pursue every claim or defense,

regardless of its merit, viability, or realistic chance for success").  Accordingly, petitioner is not

entitled to relief on his ineffective assistance of counsel claim.

### b. Prior Acts of Misconduct

        In his second ground for relief, petitioner claims that the trial court erred in admitting into

evidence his "prior bad acts."  Pet. at 5.  He argues that "they are useing [sic] my priors to justify

my 34 to life sentence.  My sentence would be far less with no life sentence at all."  *Id.*  In state

court, petitioner specifically objected to evidence of his violent misconduct in 2003, as described

by Justin and Officer Landenberg.  Resp.'s Lodg. Doc. 3, at 9-12.  This court will assume that

petitioner is referring to the same evidence here.  Petitioner also claims that his trial counsel

rendered ineffective assistance in failing to object to the admission of this evidence.  Pet. at 5.[5]

---

        [5] As in the claim discussed above, respondent argues that the failure of petitioner's trial
counsel to make a contemporaneous objection to the admission of petitioner's prior acts of
misconduct constitutes a procedural default which prevents this court from considering the

1    The California Court of Appeal denied petitioner's claims in this regard, reasoning as

2  follows:

> Defendant claims admitting the uncharged prior misconduct
> evidence violated Evidence Code sections 352 and 1101.
> Defendant's failure to raise an objection under sections 352 or
> 1109 forfeits those claims on appeal.  (*People v. Clark* (1992) 3
> Cal.4th 41, 125-126.)  Defendant's ineffective assistance of
> counsel claim fails because the evidence was properly admitted.
>
> Evidence a defendant committed crimes other than the crime
> charged is generally inadmissible for the purpose of showing a
> disposition to commit the charged crime.  (Evid.Code, § 1101,
> subd. (a); *People v. Kipp, supra*, 18 Cal.4th at p. 369.)  Evidence
> of other crimes is admissible to prove facts other than defendant's
> criminal disposition, that is, matters such as intent, knowledge, and
> the absence of mistake or accident.  (Evid.Code, § 1101, subd. (b);
> *People v. Kipp, supra*, at p. 369.)  "Such evidence must tend
> logically, naturally and by reasonable inference to prove the issue
> upon which it is offered."  (*People v. Evers* (1992) 10 Cal.App.4th
> 588, 598.)  Thus, "[t]he admissibility of other crimes evidence
> depends on (1) the materiality of the facts sought to be proved, (2)
> the tendency of the uncharged crimes to prove those facts, and (3)
> the existence of any rule or policy requiring exclusion of the
> evidence."  (*People v. Carpenter* (1997) 15 Cal .4th 312, 378-379.)
>
> The trial centered on whether the collision was intended by
> defendant or an accident.  Intent is rarely susceptible to direct
> proof and thus must be inferred from all of the facts and
> circumstances disclosed by the evidence.  (*People v. Kwok* (1998)
> 63 Cal.App.4th 1236, 1245.)  Proving intent requires the least
> degree of similarity between the charged and uncharged crimes.
> (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)  The uncharged
> misconduct must be close enough to support an inference that
> defendant "'probably harbor[ed] the same intent in each instance.'
> [Citations.]"  (*People v. Robbins* (1988) 45 Cal.3d 867, 879.)
>
> "The inference to be drawn is not that the actor is disposed to
> commit such acts; instead, the inference to be drawn is that, in
> light of the first event, the actor, at the time of the second event,
> must have had the intent attributed to him by the prosecution ."
> (*People v. Robbins, supra*, 45 Cal.3d at p. 879, italics omitted.)
> The uncharged misconduct involves violence or threatened
> violence against the two victims.  While Kimberly was defendant's
> target, the uncharged offenses involving Justin are still relevant to
> prove that the collision involving Justin and his mother was not an

---

26  merits of this claim.  Answer, at 20.  Again, this court will assume that the claim is not subject to
a procedural default and will deny it on the merits.

accident.  Proof of intent does not require identical victims in the charged and uncharged offenses.  A father's prior abuse of one of his children is admissible to prove that the death of another of his children was not an accident.  (*See People v. Evers, supra,* 10 Cal.App.4th at pp. 598-599.)  Defendant's actions in striking Justin and threatening him with a gun shows a willingness to use violence in domestic disputes.  This supports an inference that defendant intended the collision because he was still angry with his wife.

Since a prejudicial impact is inherent in such evidence, the uncharged offense is admissible only if it has " substantial probative value."  (*People v. Thompson* (1980) 27 Cal.3d 303, 318, *italics in original, disapproved on other grounds in People v.. Williams* (1988) 44 Cal.3d 883, 907, fn. 7.)  We must determine whether the probative value of the evidence was substantially outweighed by its prejudicial effect.  (Evid.Code, § 352.)  The concern in admitting prejudicial evidence of slight probative value is that the jury will be led astray and convict an innocent man because of his bad record.  (*See People v. Schader* (1969) 71 Cal .2d 761, 774.)

We find that the probative value of the evidence is not outweighed by its prejudicial effect.  Prejudicial evidence refers "'to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues.'" (*People v. Bolin* (1998) 18 Cal.4th 297, 320.)

While defendant was convicted of making a terrorist threat (Pen.Code, § 422) for the December 8 incident, the evidence did not indicate defendant was punished for the incident, increasing the danger that the jury might be inclined to punish defendant for the uncharged offense.  (*See People v. Ewoldt, supra,* 7 Cal.4th at p. 405.)  The uncharged misconduct evidence was not more inflammatory than the testimony describing the charged offense, which reduces the prejudice.  (*Ibid.*)  On the whole, we find it unlikely the jury disbelieved the evidence that defendant intended to collide with his wife but convicted him based on the uncharged misconduct evidence. (*See ibid.*)

In order to demonstrate ineffective assistance of counsel, defendant must show counsel's action was, objectively considered, both deficient under prevailing professional norms and prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].)  The evidence of defendant's guilt was overwhelming. There were numerous eyewitnesses to defendant's crimes, and he made highly damaging admissions to the arresting officer. Defendant, who told the arresting officer, "I meant to hit her" and "I know I fucked up, but she deserves to fucking die," was not prejudiced by the uncharged misconduct evidence.  Therefore, defendant did not receive ineffective assistance of counsel even if the uncharged misconduct was erroneously admitted.

14

1   Opinion, at 9-13.

2        The question whether evidence of prior uncharged acts was properly admitted under

3   California law is not cognizable in this federal habeas corpus proceeding.  *Estelle*, 502 U.S. at

4   67.  The only question before this court is whether the trial court committed an error that

5   rendered the trial so arbitrary and fundamentally unfair that it violated federal due process.  *Id.*

6        The United States Supreme Court "has never expressly held that it violates due process to

7   admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that

8   it violates due process to admit other crimes evidence for other purposes without an instruction

9   limiting the jury's consideration of the evidence to such purposes."  *Garceau v. Woodford*, 275

10   F.3d 769, 774 (9th Cir. 2001), *overruled on other grounds by Woodford v. Garceau*, 538 U.S.

11   202 (2003).  In fact, the Supreme Court has expressly left open this question.  *See Estelle*, 502

12   U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state

13   law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to

14   show propensity to commit a charged crime").  *See also Holley v. Yarborough*, 568 F.3d 1091,

15   1101 (9th Cir. 2009) (noting that the United States Supreme Court "has not yet made a clear

16   ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process

17   violation sufficient to warrant issuance of the writ").

18        Under Ninth Circuit law, the admission of "other acts" evidence violates due process

19   only if there were no permissible inferences the factfinder could have drawn from the evidence.

20   *McKinney v. Rees*, 993 F.2d 1378, 1381 (9th Cir. 1993) (question is "whether any inferences

21   relevant to a fact of consequence may be drawn from each piece of the evidence, or whether they

22   lead only to impermissible inferences about the defendant's character"); *Jammal*, 926 F.2d at

23   920 ("[e]vidence introduced by the prosecution will often raise more than one inference, some

24   permissible, some not; we must rely on the jury to sort them out in light of the court's

25   instructions").  Evidence of prior similar crimes "will only *sometimes* violate the constitutional

26   right to a fair trial, if it is of no relevance, or if its potential for prejudice far outweighs what little

15

relevance it might have." *United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001) (emphasis in original).

Petitioner's trial was not rendered fundamentally unfair because of the admission into evidence of his prior uncharged acts of violence. As noted by the state appellate court, the evidence against petitioner was overwhelming, consisting of the testimony of numerous eyewitnesses and petitioner's own statements to police, which demonstrated that he intended to ram his wife's vehicle and to hurt her. Evidence about petitioner's prior actions against Justin, which were less inflammatory than the charged crimes, could not have had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Further, the evidence was not unreliable, and it could have been admitted in this case to show petitioner's intent and motive. These are rational inferences the jury could draw from the challenged evidence that are not constitutionally impermissible. Under the circumstances presented here, the admission into evidence of petitioner's prior acts did not constitute a due process violation.

Nor has petitioner demonstrated that his trial counsel rendered ineffective assistance in failing to object to the admission into evidence of petitioner's prior bad acts. The California Court of Appeal concluded that counsel's failure to object was not prejudicial in light of the overwhelming evidence of petitioner's guilt. The court also concluded that the evidence of petitioner's prior misconduct was admissible under state law. In light of these determinations, an objection by counsel to the admission of this evidence would have been futile. Counsel was not ineffective in failing to raise a meritless objection. *Jones*, 231 F.3d at 1239 n.8.

## 2. Cruel and Unusual Punishment

In his final ground for relief, petitioner claims that his sentence is cruel and unusual, in violation of the Eighth Amendment. Pet. at 6. He argues that the sentence is "grossly disproportionate to the offense." *Id.* He notes that "the jury did not find me guilty of attempted murder and felt I had not acted with intent to kill." *Id.*

The California Court of Appeal rejected these arguments, reasoning as follows:

> Defendant contends his sentence of 35 years to life is cruel and unusual punishment under the United States and California Constitutions.  We reject this claim.
>
> The California Constitution prohibits "[c]ruel or unusual punishment."  (Cal. Const., art. I, § 17.)  We construe this provision separately from its counterpart in the federal Constitution.  (*See Raven v. Deukmejian* (1990) 52 Cal.3d 336, 354-355.)
>
> A punishment may violate the California Constitution although not "cruel or unusual" in its method, if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity."  (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted.)  The Lynch court identified three techniques courts use to administer this rule.  First, they examine the nature of the offense and the offender.  (*Id.* at p. 425.)  Second, they compare the punishment with the penalty for more serious crimes in the same jurisdiction.  (*Id.* at p. 426.)  Third, they compare the punishment to the penalty for the same offense in different jurisdictions.  (*Id.* at p. 427.)
>
> Defendant was convicted of assault with a deadly weapon, a serious felony.  (Pen.Code, § 1192.7, subd. (c)(31).)  The true findings of great bodily injury for the assault and aggravated child abuse counts makes these crimes violent felonies.  (Pen.Code, § 667.5(c)(8).)  These crimes arose from an assault that injured defendant's stepson and critically injured his wife.
>
> Defendant has an extensive criminal record.  He was personally convicted of attempted robbery (Pen.Code, §§ 211, 664) and robbery (Pen.Code, § 211) in 1981, misdemeanor assault with a deadly weapon (Pen.Code, § 245, subd. (a)(1)) in 1985, assault with a deadly weapon (Pen.Code, § 245, subd. (a)(1)) in 1988, possession of a firearm by a felon (Pen.Code, § 12021, subd. (a)) in 1992, and several other offenses.
>
> "[T]he three strikes law punishes not only [defendant's] current offenses, but also his recidivism.  California statutes imposing more severe punishment on habitual criminals have long withstood constitutional challenge."  (*People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1136-1137.)  Defendant's current offenses are serious and his criminal record is both substantial and often violent.  The legislative determination that, given defendant's repeated failure to reform, the public should now be protected from this often violent recidivist can hardly be said to "'shock the conscience.'"  (*In re Lynch, supra,* 8 Cal.3d at p. 424.)

////

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment, but strict proportionality between crime and punishment is not required. "'Rather, [the Eighth Amendment] forbids only extreme sentences that are "grossly disproportionate" to the crime.'" (*People v. Cartwright, supra*, 39 Cal.App.4th at p. 1135.)

The United States Supreme Court has upheld statutory schemes allowing life imprisonment for recidivists upon a third conviction for a nonviolent felony in the face of Eighth Amendment challenges. (*See, e.g., Ewing v. California* (2003) 538 U.S. 11, 19, 29-30 [155 L.Ed.2d 108, 116, 122-123] [25-year-to-life sentence under Three Strikes law for theft of three golf clubs worth $399 each]; *Harmelin v. Michigan* (1991) 501 U.S. 957 [115 L.Ed.2d 836] [mandatory life sentence without the possibility of parole for possession of more than 650 grams of cocaine].)

Defendant was convicted of violent felonies, and has an extensive and violent criminal record.  Defendant exemplifies "the 'revolving door' career criminal to whom the Three Strikes law is addressed." (*People v. Stone* (1999) 75 Cal.App.4th 707, 717.) His sentence is not grossly disproportionate.

Opinion, at 13-15.

The United States Supreme Court has held that the Eighth Amendment includes a "narrow proportionality principle" that applies to terms of imprisonment. *See Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) (Kennedy, J., concurring). *See also Taylor v. Lewis*, 460 F.3d 1093, 1097 (9th Cir. 2006).  However, successful challenges in federal court to the proportionality of particular sentences are "exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289-90 (1983). *See also Ramirez v. Castro*, 365 F.3d 755, 775 (9th Cir. 2004).  "The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring) (citing *Solem v. Helm*).  In *Lockyer v. Andrade*, the United States Supreme Court held that it was not an unreasonable application of clearly established federal law for the California Court of Appeal to affirm a "Three Strikes" sentence of two consecutive 25 year-to-life imprisonment terms for a petty theft with a prior conviction involving theft of $150.00 worth of videotapes. *Andrade*, 538 U.S. at 75; In *Ewing v. California*,

18

538 U.S. 11, 29 (2003), the Supreme Court held that a "Three Strikes" sentence of 25 years-to-life in prison imposed on a grand theft conviction involving the theft of three golf clubs from a pro shop was not grossly disproportionate and did not violate the Eighth Amendment.

In assessing the compliance of a non-capital sentence with the proportionality principle, a reviewing court must consider "objective factors" to the extent possible. *Solem*, 463 U.S. at 290. Foremost among these factors are the severity of the penalty imposed and the gravity of the offense. "Comparisons among offenses can be made in light of, among other things, the harm caused or threatened to the victim or society, the culpability of the offender, and the absolute magnitude of the crime." *Taylor*, 460 F.3d at 1098.[6]

This court finds that petitioner's sentence does not fall within the type of "exceedingly rare" circumstance that would support a finding that his sentence violates the Eighth Amendment. Petitioner's sentence is certainly a significant penalty. However, petitioner committed assault with a deadly weapon, spousal abuse with great bodily injury, and child endangerment, by deliberately ramming his wife's car. Petitioner has a lengthy criminal background involving crimes of violence. Clerk's Transcript on Appeal, at 423-28. In *Harmelin*, the petitioner received a sentence of life without the possibility of parole for possessing 672 grams of cocaine. In light of the *Harmelin* decision, as well as the decisions in

---

[6] As noted in *Taylor*, the United States Supreme Court has also suggested that reviewing courts compare the sentences imposed on other criminals in the same jurisdiction, and also compare the sentences imposed for commission of the same crime in other jurisdictions. 460 F.3d at 1098 n.7. However,

> consideration of comparative factors may be unnecessary; the *Solem* Court "did not announce a rigid three-part test." *See Harmelin*, 501 U.S. at 1004, 111 S.Ct. 2680 (Kennedy, J., concurring). Rather, "intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1004-05, 111 S.Ct. 2680; see also *Rummel v. Estelle*, 445 U.S. 263, 282, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) ("Absent a constitutionally imposed uniformity inimical to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State.").

*Id.*

1   *Andrade* and *Ewing*, which imposed sentences of twenty-five years to life for petty theft

2   convictions, the sentence imposed on petitioner is not grossly disproportionate.  Because

3   petitioner does not raise an inference of gross disproportionality, this court need not compare

4   petitioner's sentence to the sentences of other defendants in other jurisdictions.  This is not a

5   case where "a threshold comparison of the crime committed and the sentence imposed leads to

6   an inference of gross disproportionality."  *Solem*, 463 U.S. at 1004-05.  The state courts'

7   rejection of petitioner's Eighth Amendment claim was not an unreasonable application of the

8   Supreme Court's proportionality standard.  Accordingly, this claim for relief should be denied.

9   **III.  Conclusion**

10          For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

11   application for a writ of habeas corpus be denied.

12          These findings and recommendations are submitted to the United States District Judge

13   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one

14   days after being served with these findings and recommendations, any party may file written

15   objections with the court and serve a copy on all parties.  Such a document should be captioned

16   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

17   within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

18   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

19   his objections petitioner may address whether a certificate of appealability should issue in the

20   event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

21   Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

22   enters a final order adverse to the applicant).

23   DATED:  January 4, 2012.

24                                                           EDMUND F. BRENNAN
25                                                           UNITED STATES MAGISTRATE JUDGE
26

                                                  20